## Larrimore v. Doe

*Terry Valko,* for plaintiff.

*R. Thomas Forr Jr.,* for unborn child.

*Barbara M. Wolvovitz* and *Jon Pushinsky,* for defendant.

CALLAN, *J.,* September 25, 1989 — Plaintiff Keith Larrimore and X, an unborn child, filed a

motion for a preliminary injunction and an action for declaratory relief. Plaintiffs seek a judicial declaration holding that the Abortion Control Act is unconstitutional on seven separate grounds as it relates to plaintiff.

Plaintiff's petition for preliminary injunction was heard by this court as the final matter in motions court on September 18, 1989.

Plaintiffs asserted that the Supreme Court's recent decision in *Webster* changed the status of the law concerning abortion. Plaintiffs also asserted that the *Danforth* decision was not controlling and was distinguishable.

On the basis that the law was not clear as to the issues presented in the wake of *Webster,* this court granted the preliminary injunction to preserve the status quo pending a final hearing. This court was concerned about the plaintiff's standing but desired time to review the *Webster* decision. If the case law had supported the plaintiffs and no injunction issued, the harm done was irreparable. Making no decision on the very date that the abortion was scheduled was the same as denying the petition.

The date of the hearing was set on the continuation resulting in the injunction for September 27, 1989 at 10 a.m., but moved forward by this court to September 25, 1989 to be in compliance with rule 1531(d) of the Pennsylvania Rules of Civil Procedure which required a hearing within five days of the granting of a preliminary injunction.

An application for stay or dissolution of this court's preliminary injunction was filed with the Pennsylvania Superior Court on or about September 19, 1989. A notice of appeal was filed on or about September 20, 1989.

The docket record was mailed to the Superior

Court on or about September 21, 1989. This case is also now pending before the Superior Court.

All matters of record, including the application for stay and brief in support thereof, and briefs submitted, have been reviewed by this court; and having heard argument this date by the attorneys for each side, we proceed to disposition of this case.

## ISSUES

(I) Does plaintiff Larrimore have standing to seek the relief requested?

(II) Does X, an unborn child, have standing to seek the relief requested?

## FINDINGS OF FACTS

Plaintiff Keith Larrimore asserts that he is the father of X, an unborn child. Mr. Larrimore was informed by Jane Doe on or about September 14, 1989 that she was expecting a baby and that he was the father. Jane Doe indicated to plaintiff, Larrimore, that she intended to have an abortion performed in Pittsburgh on Monday, September 18, 1989.

Soon after learning of the pregnancy and Jane Doe's intention to have an abortion, Mr. Larrimore sought legal advice which resulted in the instant matter being presented to the Blair County courts. On Friday, September 15, 1989, an order to show cause was issued by Judge Peoples of the court of common pleas. The rule returnable was scheduled for Monday, September 18, 1989, at motions court. Jane Doe was served with the order to show cause at about 6 p.m. on Friday, September 15, 1989.

This court received the petition and complaint in this case at or about 9 a.m. on September 18, 1989. That same morning Jane Doe called the court

administrator's office to indicate that she could not attend the hearing, and was also unable to obtain legal counsel. .

Plaintiff Larrimore testified and offered one witness. The thrust of the testimony was to establish that Mr. Larrimore had known Jane Doe for about two-and-a half months, but had been intimate with her, and that he was the father of X, an unborn child. The length of pregnancy was determined to be in the fifth or sixth week, clearly within the first trimester.

In early July, the U.S. Supreme Court issued its most recent opinion dealing with the abortion issue, *Webster v. Reproductive Health Services*, 492 U.S. __, 106 L.Ed. 2d 410, 109 S.Ct. __ (1989) (hereinafter and before referred to as *Webster*.)

## DISCUSSION

This case raises what has been called by Justice Blackmun, "the most politically divisive domestic legal issue of our time." *Webster*, 106 L.Ed. 2d at 463. This court echoes the feelings expressed by Justice Reardon in his dissenting opinion in *Doe v. Doe*, 314 N.E. 2d 128, 62 A.L.R. 3d 1082 (1974).

"The resolution of the issues presented by the bill before the court requires entry by the court into areas of such delicacy and perplexity that the usually adequate tools of judicial scrutiny appear crude and clumsy, ill-suited to the task at hand."

It would be relatively simple for this court to sidestep or avoid this case. It is a general concept of our system of law in this commonwealth that once an appeal has been taken to the Superior Court, the court of common pleas is divested of authority to act. However, this court does not avoid a case merely because it is a political hot potato.

This court cannot be affected by or sensitive to outside pressures. The court would note that the number of out-of-court statements by participants on both sides of this case, as well as absolute statements of the wrongness of this court's decisions, only underscore the nature of the controversy. This most divisive legal issue cannot be resolved in this court. This issue is for the legislative, not the judicial, branch of government.

In this forum, in this court, the issues presented have been and will be decided on the facts and the law. There is no room in this legal forum for the absolutes reflected by both sides of this case. This court cannot make moral judgments, only legal determinations.

This court fails its oath of office to even attempt to avoid this or any other case, barring a conflict of interest. This court had the authority to grant the preliminary injunction on the basis of a colorable claim to standing, and the immediate harm which would have resulted if no action had been taken.

In *Coleman v. Coleman,* 57 Md. App. 755, 471 A.2d 1115 (1984), a temporary restraining order issued on January 6, 1984 upon petition of the husband seeking to prevent his wife from having an abortion. The court in *Coleman,* after a hearing on January 13, 1984, a period of seven days after the entry of the temporary order, dissolved that order and denied injunctive relief to the husband.

This court has not been divested of its authority to hear this case because of the Superior Court's involvement. When an ex parte injunction issues, prior to a hearing to continue the injunction, such hearing is an integral part of the proceedings. An appeal taken prior to the hearing is premature and in violation of the Rules of Civil Procedure. *United Electrical Radio and Machine Workers of America*

*v. Sherman,* 352 Pa. 133, 41 A.2d 86 (1945); *Roth v. Columbia Distributing Company of Allentown,* 371 Pa. 297, 89 A.2d 824 (1952).

Having established jurisdiction, this court turns to the legal issues presented. This court could find no case which has been decided after a review of the *Webster* decision. While defendants cites *Arnold v. Board of Education,* 880 F.2d 305 (11th Cir. 1989), this court's review thereof fails to indicate that *Webster* was considered. *Arnold* dealt with a wrongful death claim. That court held that the natural father had no standing concerning the claim of an alleged coerced abortion case. The *Arnold* case cited and followed *Danforth.* It should also be noted that *Arnold* at page 312, footnote 9 reflects that the fetus had no standing to state a cause of action in that recovery.

This court is satisfied after an extensive review of recent state and federal case law that *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 49 L.Ed. 2d 788, 96 S.Ct. 2831 (1976) (hereinafter and before referred to as *Danforth*) controls.

In deciding that case the Supreme Court held:

"The obvious fact is that when the wife and the husband disagree on this decision, the view of only one of two marriage partners can prevail. Inasmuch as it is the women who physically bears the child, and who is the more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor." *Danforth,* 428 U.S. at 71, 49 L.Ed. 2d. at 806. (citation omitted)

While plaintiffs assert that they do not seek an absolute veto, but only desire to establish the respective rights of the parties, and that *Danforth* is distinguished on the basis that the statute in *Danforth* imposed an absolute veto, such assertions are

without merit. If the woman's "right" is disputed, what plaintiffs seek is a veto. The law does not permit such a veto.

Plaintiffs challenge the Abortion Control Act as being unconstitutional because it fails to recognize the rights of the natural father, but that very issue is determined in *Planned Parenthood Association v. Fitzpatrick*, 401 F.Supp. 554 (E.D. Pa. 1975). A spousal consent provision of the Abortion Control Act was held to be invalid because that provision gave "the spouse an unqualified and unconditional veto over the wife's decision to have an abortion, thus completely ignoring the fundamental right of the pregnant woman to make the abortion decision." *Id.* at 565.

Plaintiffs assert that *Webster* changes the status of the law in terms of obtaining an abortion. This court is satisfied after an extensive review of *Webster* that any limitations or constrictions placed on *Roe v. Wade* do not reach the position urged by plaintiffs. *Danforth* not only was not constricted or limited by *Webster,* but it was extensively cited by the *Webster* court.

Whether the issue of abortion be termed a "fundamental right," "a limited fundamental right," or "a liberty interest protected by the due process clause" (see *Webster,* 106 L.Ed. 2d at 421), there is no question that Mr. Larrimore lacks standing.

Justice Blackmun stated:

"Today, *Roe v. Wade,* 410 U.S. 113, 35 L.Ed. 2d. 147, 935 S.Ct. 705 (1973) and the fundamental constitutional right of women to decide whether to terminate a pregnancy, survive but are not secure." *Webster,* 106 L.Ed. 2d. at 448.

This court is also satisfied that *Roe v. Wade* and the cases that follow hold that the word "person"

does not include the unborn. (see footnote 9, page 312 in *Arnold*). X, an unborn child, does not have standing in this case.

## CONCLUSIONS OF LAW

(1) The court has jurisdiction in this matter.

(2) Based upon both federal and state law, plaintiff, Keith Larrimore, does not have standing in this matter.

(3) Based upon state and federal law, plaintiff X, an unborn child, lacks standing in this matter.

In light of the foregoing findings, discussions and conclusions, we deem the following to be appropriate:

## DECREE NISI

And now, September 25, 1989, it is hereby ordered, directed, and decreed nisi, that the preliminary injunction entered by order of this court, dated September 18, 1989, is hereby dissolved.

It is further, ordered, directed, and decreed, that the motion for preliminary injunction and complaint for declaratory jundgment are denied and dismissed; summary judgment being entered on behalf of defendant, Jane Doe, on the complaint for declaratory judgment.

It is further ordered, directed, and decreed, that this decree nisi shall become the final decree in this case, unless exceptions be filed to said decree nisi within 10 days following the date of filing of the decree.

It is further ordered, directed, and decreed, that the prothonotary, or acting prothonotary of this court, shall provide notice of the filing of this decree nisi as mandated by the Pennsylvania Rule of Civil Procedure 1517.